**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   **FEB 07 2018**   ★

**LONG ISLAND OFFICE**

CCC:EPR
F.# 2016R00623

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JILL CASTELLANO,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

I N F O R M A T I O N

Cr. No. _____
(T. 18, U.S.C., §§ 981(a)(1)(C),
1349 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE UNITED STATES CHARGES:

<u>INTRODUCTION</u>

    At all times relevant to this Information, unless otherwise indicated:

    1.    The defendant JILL CASTELLANO was the President of a direct mail list brokerage company with corporate offices in New Jersey.  CASTELLANO brokered and managed mailing lists on behalf of clients in the direct mail business.

    2.    The defendant JILL CASTELLANO served as an agent and intermediary for mailing campaigns involving deceptive mailings sent to consumers throughout the United States and abroad.  CASTELLANO recommended and procured mailing lists of consumers to whom the deceptive mailings would be sent, and rented out lists of consumers who responded to these campaigns to other mailers seeking to send deceptive mailings.

### The Fraudulent Scheme

3.      In or about and between January 2012 and September 2016, the defendant JILL CASTELLANO, together with others, knowingly facilitated a scheme to fraudulently induce victims throughout the United States (the "Victims") to pay money for falsely promised cash awards and luxury prizes.   The fraudulent scheme generally worked as follows:

(a)      Members of the conspiracy created dozens of direct mail solicitations falsely and fraudulently notifying the Victims that they had won large amounts of money and other valuable prizes in a sweepstakes or other contest.   Many of the solicitations were purportedly sent from official-sounding yet fictitious entities, such as Registered Disbursement Division, Securities Disbursement Division, and Research Advisory Associates.   Many of the solicitations included the name and signature of a fictitious officer or representative of the fictitious entity.

(b)      As part of the scheme, the false solicitations directed the Victims to send money to pay purported processing and delivery fees associated with their promised winnings and prizes.   The Victims were provided pre-addressed return envelopes and instructed to return payments to mailboxes controlled by a "caging service."   A caging service was a company that opened post office boxes on behalf of direct mailers and handled return mail and payments that arrived at the boxes.   Although the solicitations communicated to the Victims that they had been individually selected, the solicitations were, in fact, identical, mass-produced form letters sent to the Victims based on their inclusion in

mass-mailing lists targeted to vulnerable consumers.   Members of the conspiracy did not

send large cash awards or other valuable prizes to any of the Victims who responded to the

deceptive solicitations.

       (c)     Through the execution of the fraudulent scheme, JILL

CASTELLANO, as principal of a list brokerage company, supervised list brokerage and list

management on behalf of the conspiracy, both directly and through her employees.   On a

monthly basis, CASTELLANO acted as a list broker for members of the conspiracy,

identifying and ordering mailing lists of thousands of consumers to whom members of the

conspiracy would send deceptive solicitations.   At the conclusion of each monthly mailing

campaign, members of the conspiracy conveyed to CASTELLANO the list of the Victims

who had sent payments in response to a given deceptive solicitation ("buyers") in the

previous month, so that CASTELLANO could recommend lists for the next deceptive

mailing and rent out names of recent buyers.   As a list broker, CASTELLANO identified

and entered into transactions to rent thousands of names at a time for members of the

conspiracy.   CASTELLANO also acted as a "list manager" for members of the conspiracy,

meaning that CASTELLANO promoted and rented out mailing lists generated through the

conspiracy, often to other mailers engaged in deceptive mailing campaigns.

CASTELLANO's company received a commission for list brokerage and list management

transactions conducted on behalf of the conspiracy.

       (d)     It was also part of the scheme that JILL CASTELLANO knew

that the solicitations created by the members of the conspiracy and mailed to millions of

consumers were designed to deceive recipient consumers into paying fees under the false

pretense of having won prizes and other items.   CASTELLANO routinely received copies of

the deceptive mailings sent to consumers.   At times, CASTELLANO e-mailed a sample of

the deceptive mailing piece created by members of the conspiracy to mailers that owned lists

offered for rental, as well as mailers seeking to rent lists owned by members of the

conspiracy.

       (e)     Over the course of the conspiracy detailed above, JILL

CASTELLANO and other members of the conspiracy caused millions of solicitations to be

sent by United States mail to the Victims – many of whom were elderly – throughout the

United States, including in the Eastern District of New York.

## CONSPIRACY TO COMMIT MAIL FRAUD

       4.     The allegations contained in paragraphs one through three are realleged

and incorporated as if fully set forth in this paragraph.

       5.     In or about and between January 2012 and September 2016, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant JILL CASTELLANO, together with others, did knowingly and intentionally

conspire to devise a scheme and artifice to defraud the Victims, and to obtain money and

property from the Victims, by means of materially false and fraudulent pretenses,

representations, and promises, and for the purpose of executing such scheme and artifice, did

place matters and things in a post office and authorized depository for mail matter, to be sent

and delivered by the United States Postal Service, and did deposit and cause to be deposited

matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, any such matters and things, contrary to Title 18, United States Code, Section 1341.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

6.      The United States hereby gives notice to the defendant that, upon her conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

7.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)      cannot be located upon the exercise of due diligence;

(b)      has been transferred or sold to, or deposited with, a third party;

(c)      has been placed beyond the jurisdiction of the court;

(d)      has been substantially diminished in value; or

(e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),
to seek forfeiture of any other property of the defendant up to the value of the forfeitable
property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States
Code, Section 853(p); Title 28, United States Code, Section 2461(c))


BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


_____
GUSTAV EYLER
ACTING DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE